UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21009-CR-GOLD/BANDSTRA

UNITED STATES OF AMERICA,

vs.

ORLIN DIMITROV ANGELOV,
a/k/a "Valeri Angueloff,"

       Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant Orlin Dimitrov Angelov's Amended

Motion to Suppress Evidence (D.E. 23) filed on February 15, 2008.[1] In this motion,

defendant seeks to suppress all items seized from his person on the grounds of an unlawful

search following an illegal arrest.  On February 7, 2008, this motion was referred to the

undersigned for appropriate proceedings by the Honorable Alan S. Gold pursuant to 28

U.S.C. § 636(b).  Accordingly, the undersigned conducted an evidentiary hearing on this

motion on February 19, 2008.  Based on the facts as found herein and applicable law, the

undersigned recommends that defendant's Amended Motion to Suppress Evidence be

DENIED.

---

[1]Defendant's original motion to suppress was filed without a memorandum of law
as required by the federal rules which resulted in the filing of his amended motion with
memorandum of law on February 15, 2008.  Defendant's original motion to suppress
(D.E. 16) is hereby DENIED as MOOT.

## STATEMENT OF FACTS[2]

On December 7, 2007, defendant, Orlin Dimitrov Angelov, was working for a catering company at an art event ("Art Basil") occurring at the Miami Beach Convention Center located in Miami Beach, Florida.  Catering services for the event were being supervised and controlled by Centerplate Catering Company.  Security services at the event were provided by a private security firm retained by the convention center and by off-duty police officers of the Miami Beach Police Department.

Sometime that evening, Sergeant Gary Kluger, a supervisor of several off-duty Miami Beach police officers, received a radio communication of a disturbance near Hall A of the convention center.  Sergeant Kluger responded to the area and talked to a Centerplate supervisor who reported a verbal disturbance involving defendant a few minutes earlier.  The supervisor stated that he had now fired defendant with instructions to leave the center.  However, the supervisor was fearful that the defendant might return and cause further disturbance.

Sergeant Kluger obtained identifying information about defendant including his first name ("Valeri"), his physical description, and a description of his clothing.  Sergeant Kluger then put out a "BOLO" (be on the lookout") for defendant over his police radio.  Sergeant Kluger advised in his BOLO that defendant had no authority to re-enter the convention center that night.

---

[2]This Factual Statement is based on the sworn testimony of Sargent Gary Kluger and Officer Smith Orisme of the Miami Beach Police Department, the defendant, Orlin D. Angelov, and a recorded radio communication between the police officers on December 7, 2008.  Conflicts in this testimony are resolved as stated above based on the Court's assessment of the credibility and accuracy of the recall by these three witnesses.

Within a few minutes, Officer Smith Orisme reported by radio that he had located the described individual near the south loading dock of the convention center. Officer Orisme first saw the man, later identified as defendant, after hearing the BOLO and noticing that defendant fit many aspects of the description given by Sergeant Kluger. Officer Orisme first saw defendant weaving in and out of truck trailers parked at the loading dock. Officer Orisme then exited his parked vehicle, walked up to defendant, identified himself as a police officer, and asked defendant his name. Defendant responded "Valeri" which was the same name as provided in the BOLO. Officer Orisme then asked defendant for identification and he produced an alien registration document ("green card") containing his photograph and the name "Valeri Angueloff." Officer Orisme had not arrested defendant, handcuffed him or restrained him in any manner whatsoever prior to this time.

Officer Orisme next called Sergeant Kluger on his police radio and stated that he had the described person. Sergeant Kluger came to the location and found defendant and Officer Orisme near the rear of that officer's vehicle. Officer Kluger examined defendant's "green card" and noticed that it contained two different dates of birth on the front and back sides. Sergeant Kluger then contacted immigration authorities who, following a brief investigation, advised that the identification number on defendant's "green card" was registered to a latin female. Consequently, defendant was handcuffed and held by the officers until immigration authorities responded to the scene and formally arrested defendant on the charges now pending in this case.

## ARGUMENT

Defendant moves to suppress all items found on his person, including the subject alien registration card and a social security card, on the grounds that these documents were seized from him during a warrantless search and illegal arrest. More specifically, defendant argues that he was searched only after he was unlawfully detained in an area in which he was neither trespassing nor unauthorized to be as an employee of a catering service working inside the convention center. Defendant denies that he was fired by his employer that evening and insists that the officers physically restrained and detained him before forcibly removing his identification documents from his wallet.

The facts as found above do not support defendant's position or his legal argument concerning unlawful search and seizure under the Fourth Amendment. The testimony of Sergeant Kluger clearly establishes that the officers were under the belief that defendant was terminated from his employment as a result of a verbal disturbance inside the convention center, and that defendant was instructed to leave the building without authority to re-enter that evening. Sergeant Kluger, concerned that the defendant might return, and cause further problem, issued an alert to other officers in the location in an attempt to locate defendant incident to further investigation. Minutes later, Officer Orisme noticed a person fitting defendant's description and took appropriate and lawful action, by walking up to defendant, identifying himself as a police officer, and asking defendant for his name and identification documents.

The particular issues argued by defendant, that he was not fired from his employment that evening and not trespassing outside the convention center, are not

4

relevant to Officer Orisme's actions prior to defendant's arrest.  Officer Orisme's initial encounter with defendant, during which the officer simply identified himself as a police officer, asked defendant his name, and requested his identification, did not constitute either an arrest or seizure of defendant or his  documents under the Fourth Amendment.  The Supreme Court, in *Terry v. Ohio*, 392 U.S. 1, 19 n.16(1968), explained that "not all personal intercourse between policemen and citizens involves 'seizures' of persons."  Rather, "... [o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen, may we conclude that a 'seizure' has occurred." *Id.* Here, Officer Orisme used no physical force and made no show of authority beyond identifying himself as a police officer prior to requesting defendant's identification documents.  As such, defendant was not coerced in any manner nor did Officer Orisme restrain defendant's liberty or freedom to leave in this initial encounter.  As such, defendant was not  seized at the time he voluntarily provided his alien registration card.

The government correctly notes that the touchstone for determining whether an encounter between police and citizens has escalated to a seizure is an objective test that examines whether  "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (seizure of a person occurs only if, "in view of all of the circumstances surrounding the incident," a person reasonably believes he or she is not "free to leave" an encounter with a government official).  The Supreme Court has explained that "the reasonable person standard presupposes an *innocent* person." *Florida v. Bostick*, 501 U.S. 429, 438 (1991)(emphasis in original).

From the perspective of a reasonable, innocent person, it is clear that Officer Orisme's conduct did not constitute a seizure of the defendant. Here, the officer merely approached defendant on foot in a non-threatening manner, after which he requested but did not demand his name and identification documents. Defendant was not handcuffed, restrained or otherwise threatened to produce his information. While Officer Orisme did identify himself as a police officer and was in uniform, these facts alone did not constitute a show of authority triggering the Fourth Amendment. *See United States v. Drayton*, 536 U.S. 194, 205 (2002) (display of police badge and a holstered firearm did not constitute a seizure). Also, Officer Orisme's approaching defendant and asking for his name and identification did not constitute a seizure. See *Bostick*, 401 U.S. at 434 ("mere police questioning does not constitute seizure.")

In summary, in light of the noncoercive nature of the initial encounter between Officer Orisme and defendant, the officers' request for his name and identification documents did not trigger or violate the Fourth Amendment. Only after defendant provided his alien registration card which was believed to be fraudulent after examination by the officers, did the encounter escalate into an arrest governed by the Fourth Amendment. By then, however, the alien registration card itself, coupled with the immigration authorities' confirmation that the card was most likely fraudulent, provided the officers with probable cause to believe that defendant was committing a crime.[3]

---

[3]Having so concluded, the undersigned finds it unnecessary to consider whether Officer Orisme had reasonable suspicion of criminal activity at the time of his original encounter with defendant as argued in the alternative by the government.

6

## RECOMMENDATION

Finding no violation of defendant's rights under the Fourth Amendment, the undersigned recommends that defendant's Amended Motion to Suppress Evidence be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Alan S. Gold, United States District Judge, within ten (10) days of receipt. See 28 U.S.C. §636(b)(1)( c); *United States v. Warren*, 687 F.2d 347 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983); and *Hardin v. Wainwright*, 678 F.2d 589 (5th Cir. Unit B 1982); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh. denied*, 474 U.S. 1111 (1986).

RESPECTFULLY SUBMITTED in Miami, Florida, this __22nd__ day of February, 2008.

Ted E. Bandstra
Chief United States Magistrate Judge

Copies furnished to:

Honorable Alan S. Gold
All counsel of record